Leon Lott - July 30, 2019

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

MOTHER DOE, INDIVIDUALLY AND )
AS THE MOTHER AND NATURAL    )
GUARDIAN FOR JANE DOE, A     )
MINOR,                       )
                             )
            Plaintiff,       )
                             )
v.                           )Civil Action No.:
                             )3:18-cv-02731-CMC
RICHLAND COUNTY SCHOOL       )
DISTRICT 2, SHERIFF OF       )
RICHLAND COUNTY IN HIS       )
OFFICIAL CAPACITY d/b/a      )
RICHLAND COUNTY SHERIFF'S    )
DEPARTMENT, JOHN E. EWING &  )
JAMEL BRADLEY,               )
                             )
            Defendants.      )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEPOSITION OF:    LEON LOTT

DATE TAKEN:       Tuesday, July 30, 2019

TIME:             9:03 a.m.

PLACE:            Richland County Sheriff's Office
                  5623 Two Notch Road
                  Columbia, South Carolina

REPORTED BY:      Kendra E. Johnston, RPR, CRR
                  Registered Professional Reporter,
                  Certified Realtime Reporter
                  and Notary Public

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

POST OFFICE BOX 21119

CHARLESTON, SOUTH CAROLINA 29413

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

today to take your deposition.  I understand, Sheriff, that you have had your deposition -- you've sat through many depositions in the past.  I'm required to briefly go over the ground rules.

As you know, this is your deposition.  If you need to take a break at any point in time, just let me know, and I'll be happy to take a break.  I'm going to try to move through this as quickly as possible.

I would appreciate that all of your answers to my questions be verbal so they can be part of the transcript.  And if you don't understand a question that I ask, will you please let me know?

A.    All right.

Q.    Sheriff Lott, were you responsible for hiring Deputy Bradley?

A.    I'm responsible for hiring all deputies in the Richland County Sheriff's Department including Deputy Bradley.  I always do a final interview and make a job offer to all deputies.

Q.    When did you first meet Deputy Bradley?

A.    It would be prior to his employment.

Q.    How would you describe your relationship with Deputy Bradley?

A.    He's a deputy at the sheriff's department. Same relationship I have with all other deputies.

Electronically signed by Kendra Johnston (401-179-812-4485)     b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 6

Q.    Is he currently working as a school resource officer?

A.    No, he's not.

Q.    When was he -- Was he terminated?

A.    No, he's not terminated.  He's still employed here.

Q.    Has he been reassigned from the school resource officer program?

A.    That's correct.

Q.    When was the date of that reassignment?

A.    This past Friday.

Q.    What was the purpose of -- this past Friday would have been, so it's part of the record, that would have been Friday, July 26th?

A.    If that was last Friday.

Q.    Yes, sir.

A.    That's correct.

Q.    And where has he been reassigned?

A.    Civil Process Division.

Q.    Can you tell me a little bit about the Civil Process Division?

A.    They serve civil papers.

Q.    So as part of his responsibility now, would he go from home to home serving civil process paperwork?

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 11

Q.    And the report of a student's mother that he was -- that Deputy Bradley was having a sexual relationship with a student, would that be a perceived inappropriate relationship?

MR. GARFIELD:  Object as to form.

A.    If it was true.

Q.    And the report of my client, that she was sexually assaulted by Deputy Bradley on at least four occasions at Spring Valley High School, would that be inappropriate in your mind?

A.    If it was true.

Q.    Do you believe that the allegations from my client are untrue?

A.    That's correct.

Q.    So you stand behind Deputy Bradley?

A.    That's correct.

Q.    Okay.  And what is the basis of your belief that my client, Jane Doe, was not sexually abused by Deputy Bradley?

A.    As a result of our criminal investigation.

Q.    What part of your criminal investigation exonerated Deputy Bradley?

MR. GARFIELD:  Object as to form.  You can answer.

A.    I rely on Chief Deputy Stan Smith to make

Electronically signed by Kendra Johnston (401-179-812-4485)                    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 19

MR. GARFIELD: Object to the form.

A.    Correct.

Q.    Or each one of those investigations was unfounded?

MR. GARFIELD: Same objection.

A.    No, I don't believe they were all unfounded.

Q.    Okay. And --

A.    I believe he received a verbal reprimand on the one behind Target, so that's not unfounded.

Q.    Okay. What about the report from the teacher or the cheerleading coach, do you know the outcome of that investigation?

A.    I don't.

Q.    You haven't seen that one?

A.    No, nothing that would have caused us to move him from his position.

Q.    What about the report of the parent, do you know if that one was unfounded?

A.    I believe so.

Q.    If an adult reports that a child is being sexually abused by a law enforcement officer, would you expect for that to be thoroughly investigated?

A.    Correct.

Q.    Would you expect for all witnesses to be interviewed?

Electronically signed by Kendra Johnston (401-179-812-4485)                b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 20

A.    Correct.

Q.    If a person with information is being uncooperative, as a law enforcement agency, do you have the authority and the power to issue subpoenas?

A.    No.

Q.    How do you go about issuing subpoenas?

A.    Through the courts.

Q.    Do you have the power and authority to request that a subpoena be issued?

A.    We can request, yes.

Q.    Would you do that through the solicitor's office or through the court?

A.    Solicitor's office.

Q.    And you testified earlier, Sheriff, that you believe that Deputy Bradley was innocent in all four of those reports?

MR. GARFIELD:  Object to the form.

Q.    Is that correct?

A.    That's correct.

Q.    Why do you think --

A.    Let's go back to that question.  Define what you mean by innocent.

Q.    That he was exonerated from any wrongdoing.

A.    He was verbally reprimanded for being behind a Target, so that's not being found innocent.  He was

Live Oak Reporting
843-437-9697 www.LiveOakReporting.com

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 21

there.

Q. But do you think that he was innocent of any inappropriate contact or conduct --

A. Correct.

Q. -- with that child?

A. That's correct.

Q. And you stand behind that even in light of the recent emails that you've reviewed?

A. That's correct.

Q. And have you read Deputy Bradley's sworn testimony during his deposition regarding this encounter with this young girl?

A. No, I have not.

Q. If a law enforcement officer within your agency, Sheriff Lott, is caught or determined to be deceitful or untruthful, is that grounds for termination?

A. You have to look at the whole facts and what it's about.

Q. Is it important for your officers to be truthful?

A. That's correct.

Q. What about if they're the subject in the investigation, do you expect for them to be truthful?

A. That's correct.

Electronically signed by Kendra Johnston (401-179-812-4485)                b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 22

Q.    When Deputy Bradley was asked not -- well, I'll take that back.

Are you familiar with the letter from the Richland County School District 2 requesting that Deputy Bradley not be reassigned to Richland County School District 2?

A.    I don't know if I've seen a letter.

Q.    A letter from Mr. Cleve Smith, who's in the room with us right now?

A.    I don't know that I recall a letter.

Q.    If a school resource officer -- if a school district requests that a school resource officer be reassigned, do you generally get involved in that reassignment?

A.    Generally, no.

Q.    Would that be something that you would leave up to Captain Ewing?

A.    That's correct.

Q.    Now, after Deputy Bradley was reassigned from the Spring Valley High School, I believe he was reassigned to Joseph Keels Elementary School?

A.    Correct.

Q.    Were you the person who recommended that he be reassigned there?

A.    No.

Electronically signed by Kendra Johnston (401-179-812-4485)          b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 23

Q.    Would that have been Captain Ewing?

A.    That's correct.  He makes determination on where they're assigned, and I see the list, but he makes that determination.

Q.    Fair enough.  When Deputy Bradley was reassigned from Richland County School District 2 to Richland County School District 1, did you contact anyone within the district, within the School District 1, to inform them that he had been asked not to return to Richland School District 2?

A.    No, I did not.

Q.    Would you have expected somebody to apprise them of that?

A.    That's not something that I handle at my level.  It's handled at a lower level.

Q.    I fully understand that, Sheriff, but would you expect that somebody would have informed them of the circumstances of his reassignment?

MR. GARFIELD:  Object to the form.

A.    I don't know what Captain Ewing would advise them.  I don't know.

Q.    Would that have been something that you would have left up to Captain Ewing?

A.    That's correct.

Q.    When Deputy Bradley was reassigned from the

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 24

Richland County School District 2 to the Richland County School District 1, were you comfortable with that reassignment?

A.    That's correct.

Q.    But based on what you learned on Friday, you were no longer comfortable with him serving as a school resource officer?

A.    That's correct.

Q.    According to Richland County Sheriff's Department policies, can you terminate an officer at any time for any reason?

MR. GARFIELD:  Object to the form.

A.    It's not Richland County policy.  It's state law.

Q.    State law.  And you understand that to be a state law that's in effect now?

A.    That's correct.

Q.    And based on your understanding of this litigation and these investigations and emails and things that you're privy to, do you believe that it's appropriate for Deputy Bradley to continue to work as a law enforcement officer?

MR. GARFIELD:  Object to the form.

A.    He is still employed as a Richland County deputy.

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 48

it thoroughly and determined not to pursue?

A.   No, sir.  That's the basis of it.

Q.   Did you have any follow-up questions about it?

A.   No.

Q.   And we've talked about the polygraph.  We've talked about the statements.  You didn't review the statements.

A.   No.

Q.   You weren't told about the inconsistencies in the statements?

A.   No.

Q.   Did you review the psychological forensic evaluation of my client?

A.   No.

Q.   Do you know Dr. Allison Foster, who does these psychological evaluations for the sheriff's department?

A.   I've met her.

Q.   Do you believe that she does a good job?

A.   To my knowledge.

Q.   And you-all will refer victims to her?

A.   Correct.

Q.   And based on what Stan Smith told you, Chief Deputy Stan Smith, you were comfortable with Deputy

Electronically signed by Kendra Johnston (401-179-812-4485)                    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 49

Bradley continuing to work with students and minors --

A.    That's correct.

Q.    -- at a school setting?  Deputy Bradley was transferred during the pendency of this litigation -- excuse me -- criminal investigation to a different school before he returned back to Spring Valley.  Did you have any involvement in him being temporarily reassigned?

A.    No.

MR. GARFIELD:  Object to the form of the question.

A.    No.  I don't know.

Q.    Okay.  And we spoke briefly about the letter from Mr. Cleve Smith, who's here in the room with us today, asking that Deputy Bradley not be reassigned to Richland County School District 2.  Was that brought to your attention?

A.    Yes.

Q.    Okay.  Was it brought to your attention at the time that it happened or, you know, after litigation was filed?

MR. GARFIELD:  Object to the form.

Q.    So, this letter from --

A.    Could I see the letter?

Q.    Absolutely.

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 50

MR. GARFIELD:  Can you maybe tell him when litigation was filed.  I don't know even know that.

MR. MOORE:  I'll mark it as Plaintiff's Exhibit 2.

(Plaintiff's Exhibit No. 2 marked for identification.)

MR. MOORE:  Anybody need a copy?

MR. GARFIELD:  Was this identified in accordance with the notice and --

MR. MOORE:  If you want to talk to the sheriff, you're welcome to do that.

MR. GARFIELD:  Okay.  Well, let's do that. Let's step out.

(Off the record.)

MR. GARFIELD:  Thank you.

BY MR. MOORE:

Q.    Sheriff, have you had a chance to review the December 17th, 2018, letter from Mr. Cleveland Smith with your attorney?

A.    Yes, I have.

Q.    Okay.  Were you familiar with this letter prior to today?

A.    No.

Q.    Okay.  Did you know that in December of 2018, the Richland County School District 2 requested

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

Leon Lott - July 30, 2019

Page 51

that Deputy Bradley not be assigned to their district or attend any extracurricular activities?

A.    Right.  I would have been advised by Captain Ewing.

Q.    Okay.  And when you were advised by Captain Ewing of this, did that cause you some concern?

A.    No.

Q.    Has Captain Ewing ever advised you of any other school resource officer ever being asked not to return to a school district?

A.    Yes.

Q.    Okay.  On how many occasions?

A.    I don't know.

Q.    What were the circumstances of the other requests?

A.    I don't recall.

Q.    Okay.  And you testified earlier, Sheriff, that the four investigations into Deputy Bradley in your opinion don't rise to the level of a pattern.

MR. GARFIELD:  Object to the form.

Q.    How many more reports need to be made before you start to recognize a pattern of perceived misconduct regarding this officer?

MR. GARFIELD:  Object to the form.

A.    We deal with facts and if something is true

Electronically signed by Kendra Johnston (401-179-812-4485)    b48766d3-cddf-4bd1-b1a9-6a1169072654

J. Stan Smith - November 1, 2019

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

MOTHER DOE, INDIVIDUALLY AND ) CIVIL ACTION NO:
AS THE MOTHER AND NATURAL     ) 3:18-cv-02731-CMC
GUARDIAN FOR JANE DOE, A      )
MINOR,                        )
                              )
        Plaintiff,            )
                              )
vs.                           )
                              )
RICHLAND COUNTY SCHOOL        )
DISTRICT 2, SHERIFF OF        )
RICHLAND COUNTY IN HIS        )
OFFICIAL CAPACITY d/b/a       )
RICHLAND COUNTY SHERIFF'S     )
DEPARTMENT, JOHN E. EWING &   )
JAMEL BRADLEY,                )
                              )
        Defendants.           )

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

DEPOSITION OF:   J. STAN SMITH

DATE TAKEN:      Friday, November 1, 2019

TIME:            10:42 a.m.

PLACE:           Crowe LaFave
                 500 Taylor Street, Suite 202
                 Columbia, South Carolina

REPORTED BY:     EVE WILBANKS
                 Registered Professional
                 Reporter, Certified LiveNote
                 Reporter and Notary Public
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

POST OFFICE BOX 21119
CHARLESTON, SOUTH CAROLINA 29413

Live Oak Reporting
843-437-9697 www.LiveOakReporting.com

Electronically signed by Eve Wilbanks (101-177-349-6970)          2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 13

Q.   CID.  I see it on your shirt too, so that helps.  Chief Smith, have you had the occasion to work with Lieutenant Chris Lindler?

A.   I do, or have.

Q.   And does he work with the department?

A.   He does.

Q.   Do you have a good working relationship with Lieutenant Lindler?

A.   I would say so.

Q.   Do you trust him to conduct thorough and complete investigations?

A.   Well, I trust all my lieutenants to do so.  It doesn't mean that there is sometimes not an error or things happen in criminal investigations.  But I do trust them, yes, to answer your question.

Q.   Did Lieutenant Lindler recommend to you that Deputy Bradley be removed from the SRO program back in April of 2018, last year?

A.   He may have.

Q.   Why didn't you follow those recommendations?

A.   Because it was not under my authority to do so.

Q.   When you were provided with that

Electronically signed by Eve Wilbanks (101-177-349-6970)     2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 14

information, that your investigator had concerns about Deputy Bradley interacting with students, what did you do with that information?

A.    The only thing I would have done with it would be relay it to Sheriff Lott.

Q.    Did you relay it to Sheriff Lott, that your investigator had concerns regarding Deputy Bradley returning to the SRO program?

A.    I think Sheriff Lott and I had ongoing discussions back and forth about this matter at that time, particularly as to whether it was criminal or not.  So probably -- in light of those discussions, probably so.  I don't remember specifically the discussion, but --

Q.    As you sit here today, do you know whether or not you specifically told Deputy -- or excuse me -- Sheriff Lott that your investigator had concerns about Deputy Bradley returning to the SRO program?

A.    I believe that that occurred, yes, sir.

Q.    So you believe that you relayed that to Sheriff Lott?

A.    Yes, sir.  I don't remember the exact -- you know, the manner, whether it was face-to-face, whether I was on the phone, or the day, but I

Electronically signed by Eve Wilbanks (101-177-349-6970)                    2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 17

personally. I know there were conversations, though, particularly with Lieutenant Lindler and Captain Jackson.

Q. What do you understand the nature of those communications to be?

A. Just a consult with them, going over the allegations, the facts of the case, to make a determination whether there was an authorization for a warrant.

Q. And is it your understanding that your lieutenant and your captain met with Ms. McDuffie on behalf of the solicitor's office regarding whether or not there was enough probable cause to bring a criminal charge against Deputy Bradley?

A. I don't know whether they actually met or spoke on the phone, but there was communication. I think Luck Campbell was involved in that as well.

Q. Have you communicated with Captain Jackson or Lieutenant Lindler on e-mail about Deputy Bradley?

A. I don't recall doing so.

Q. You don't know if you have or not?

A. I don't. I don't know why I would have. I mean, it's just one phone call away. I'm not

Electronically signed by Eve Wilbanks (101-177-349-6970)    2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 18

saying I didn't.  I just don't recall doing so.

Q.   Have you been asked to search your e-mails for any communications regarding Deputy Bradley?

A.   No, sir.

Q.   After Lieutenant Lindler brought to your attention his concerns about Deputy Bradley returning as an SRO, did you voice those concerns with anybody other than Sheriff Lott?

A.   Again, I don't recall.  My main focus was whether there was a criminal -- there was probable cause and a case could be made, not about his removal as an SRO.

Q.   So your focus and your attention wasn't whether or not it would be safe for students if Deputy Bradley returned to the Richland County School District?

A.   It wasn't my call to make.

Q.   Whose call was it to make?

A.   It would have been between his chief and the sheriff.

Q.   Who was his chief?

A.   Chief Deputy Wash James.

Q.   If those concerns were brought to your attention, did you not feel compelled to have a

Live Oak Reporting
843-437-9697 www.LiveOakReporting.com

Electronically signed by Eve Wilbanks (101-177-349-6970)                    2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 19

conversation with somebody about it?

A.    I think I testified that I think I probably talked to the sheriff about that and -- during our communications.  But our communications would have primarily been focusing on the criminal part of it.  But I'm sure that those recommendations were relayed.  I just don't remember the exact manner in which they were relayed or the...

Q.    When conducting a criminal investigation into another law enforcement officer at the sheriff's department, one of your coworkers, I mean, is this the first time you've done this, or had you done this in the past?

A.    We've done it frequently.  We just did two, as a matter of fact.

Q.    Involving coworkers?

A.    We work our own criminal investigations of our officers.  We also work our officer-involved shootings, which could result in criminal charges.

Q.    When doing these criminal investigations, these investigations within the criminal investigation unit, are you looking for civil rights violations?

Electronically signed by Eve Wilbanks (101-177-349-6970)

2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 35

it's referred to, I think, by the polygraph examiner as possible countermeasures.

Q.    Were you made aware that Deputy Bradley had been untruthful in the sworn statements that he had provided to your investigators?

MR. GARFIELD:   Object to the form.

A.    Repeat that question.

Q.    Were you made aware that Deputy Bradley had been untruthful in the sworn statements that he had provided to your investigators?

MR. GARFIELD:   Same objection.

A.    I am unaware of that.

Q.    You are unaware?  No one brought that to your attention?

A.    No, sir.

Q.    Would that have been something that you would have liked to have known about?

A.    Let me back up.  I'm aware of this.  As far as truthful, as far as a sexual assault, I'm aware that there was one discrepancy about being alone with the young lady in his office.

Q.    Is that the only discrepancy that was brought to your attention?

A.    That's the only one I recall.

Q.    And if he provided a sworn statement

Electronically signed by Eve Wilbanks (101-177-349-6970)                    2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 38

untrue. We've talked about Lindler's recommendations to you that he be removed from the SRO program. Based on just those things that we've discussed, I understand that you are not able to support a criminal charge being brought against him; is that fair to say?

A. Yes.

Q. Did you think that -- did you have a belief that something was going to happen to Deputy Bradley as a result of what was uncovered in your investigation?

A. I don't know that I ever had that belief either way. It wasn't my concern; my concern was whether or not it was a criminal charge.

Q. Whose concern was it, whether or not Deputy Bradley was going to be able to continue as an SRO, unpunished for what was discovered as a result of your criminal investigation?

A. It would have been Chief James and Sheriff Lott.

Q. What about Captain Ewing, his supervisor?

A. It would have probably been under his purview as well, but I'm not sure he would have been the decision-maker there.

Electronically signed by Eve Wilbanks (101-177-349-6970)    2ef7f8c9-a56c-48cc-b3f9-661517afc291

J. Stan Smith - November 1, 2019

Page 41

A.    Wash James.

Q.    How do you spell his first name; do you know?

A.    W-A-S-H.

Q.    Is he still with the sheriff's department?

A.    He is.

Q.    Is "Wash" short for Washington?

A.    It may be.  I thought that's probably what you were going to ask me next.  I don't know that I've ever been told that, but I just assumed it was short for Washington.

Q.    This memorandum to Chief Lott that is Exhibit 1 -- excuse me -- to Sheriff Lott, do you think that's an appropriate summary of what your team's investigation revealed?

A.    I think the last sentence, if "...there is insufficient probable cause," is very accurate, yes.

Q.    And I'm not asking if it's accurate. I'm just asking if you think this is a good summary for the sheriff to rely on in making a determination as to what to do with Deputy Bradley?

A.    If he wanted more, he would have asked.

Electronically signed by Eve Wilbanks (101-177-349-6970)                    2ef7f8c9-a56c-48cc-b3f9-661517afc291