IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Mother Doe, individually and as the Mother and Natural Guardian for Jane Doe, a Minor, | ) ) ) | |
| | ) | CIVIL ACTION NO. 3:18-cv-02731-CMC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR SUMMARY JUDGMENT** |
| Richland County School District Two, | ) | **BY DEFENDANT JAMEL BRADLEY** |
| Sheriff of Richland County in his official | ) | |
| capacity d/b/a Richland County Sheriff's | ) | |
| Department ("RCSD"), John E. Ewing, and | ) | |
| Jamel Bradley, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Defendant Jamel Bradley submits this memorandum in support of his Motion for

Summary Judgment.

## I.      GROUNDS FOR MOTION.

Jamel Bradley moves for Summary Judgment on the following grounds:

A.      Although the minor Plaintiff has chosen not to assert any state law tort causes of

action against the Defendant Jamel Bradley, where a claim sounds in both state tort law and

substantive due process, state tort law is the rule and due process the distinct exception, as the

Supreme Court has established a strong presumption that §1983 due process claims which

overlap state tort law, should be rejected; and the case, if diversity is lacking, is sent to state

court.  The minor Plaintiff's 42 U.S.C. §1983 substantive due process claim under the Fourteenth

Amendment against Jamel Bradley is in reality a state law tort claim, and should be dismissed,

with leave granted to the minor Plaintiff to pursue her state law tort claim in State Court.

B.      Jamel Bradley is entitled to qualified immunity.

## II.    PLEADINGS.
### A.  PLAINTIFFS' CAUSES OF ACTION AGAINST JAMEL BRADLEY.

The Plaintiffs' Complaint alleges that Jamel Bradley was employed by the Richland County Sheriff's Department and/or Richland County School District 2 as a school resource officer at Spring Valley High School, that he was being sued in his individual capacity, and that he had sexually assaulted the minor Plaintiff Jane Doe on five separate occasions during her freshman and sophomore years as a student at Spring Valley.  *See*, *generally*, Complaint (ECF Entry No. 1), pp. 2-7, ¶¶ 6, 11, 12, 13, 14, 15, 16, 17, 18, 20, and 21.  The Complaint alleges that the sexual assaults ranged from unwanted sexual advances to unwanted kissing, touching and fondling, with two of the occasions taking place the week of March 12, 2018 inside of the Defendant Bradley's office at Spring Valley High School, behind locked doors, but did not include intercourse.  *Id*., *e.g*., pp. 4-5, ¶¶ 11, 12, 13, and 15.  The Complaint then alleges two causes of action against Jamel Bradley—a 42 U.S.C. §1983 claim by the minor Plaintiff Jane Doe against the Defendant Bradley alone for violation of due process under the Fourteenth Amendment of the United States Constitution, *id*., pp. 11-12, ¶¶27-31, and a "Loss of Personal Services" claim by the Plaintiff Mother Doe against all Defendants.  *Id*., pp. 22-23, ¶¶68-70.

No state law tort claim is asserted by the minor Plaintiff, Jane Doe, against Jamel Bradley, with regard to the alleged unwanted sexual advances, kissing, touching, and fondling.

### B.  JAMEL BRADLEY'S DEFENSES PLED.

Jamel Bradley responded to the allegations against him in a joint Answer on Behalf of Defendants Sheriff of Richland County d/b/a RCSD, Ewing, and Bradley (ECF Entry No. 12) (hereinafter "Answer"), interposing a qualified general denial and certain affirmative defenses to the 42 USC §1983 claim, including Qualified Immunity.  Responding to the Plaintiffs' allegations that he had been employed as a school resource officer at Spring Valley High School and was being sued in his individual capacity, Bradley admitted that, at all relevant times he was

2

acting within the course and scope of his employment and official duties as a Richland County Deputy Sheriff as well as under color of state law, and denied that he had personally taken any action that resulted in the minor Plaintiff's federal constitutional rights. *Id*., p. 3, ¶8, responding to Complaint, ¶6.   Bradley further denied the allegations of sexual assault and improper touching, kissing, or fondling. *E.g*., Answer, pp. 4-5, ¶¶12, 13, 14, 15, 16, 17, 18, and 20, responding to Complaint, pp. 4-7, ¶¶11, 12, 13, 14, 15, 16, 17, 18, 20, and 21.   Bradley further denied the allegations of the minor Plaintiff Jane Doe's 42 U.S.C. §1983 cause of action alleging violation of due process under the Fourteenth Amendment. *See*, Answer, p. 6, ¶¶23, 24, and 25, responding to Complaint, pp. 11-12, ¶¶28-31.

## III.    STATEMENT OF FACTS.

Jamel Bradley was hired by the Richland County Sheriff's Department in 2007, and had been employed with the Department since, serving as a School Resource Officer (SRO) assigned to Spring Valley High School for approximately eight years, through the summer of 2018. Deposition of Jamel Bradley (May 2, 2019)(hereinafter "Bradley Deposition")(Excerpts filed herewith as "Exhibit 3"), p. 22, lines 4-9; p. 24, lines 4-10, 21-25; p. 28, line 10 to p. 29, line 8.

On March 22, 2018, the minor Plaintiff Jane Doe, then a 15-year-old sophomore at Spring Valley High School, spoke with Stacey Baker, an Assistant Principal at Spring Valley High School, saying there was a rumor that she was pregnant, which rumor she denied, and obliquely indicating an improper relationship with someone at the school without identifying the individual and avoiding any detail, but inferring to Ms. Baker that at least kissing may have taken place while adamantly denying intercourse.   *See*, Stacey Baker Written Statement, document control page numbers 00432-D-006 through -007, included in Excerpts from Plaintiff's Exhibit 2 to July 30, 2019 Deposition of Chris Lindler) (Excerpts filed herewith as

3

"Exhibit 1"). Ms. Baker reported the discussion to her Principal, then called Jane Doe's mother about the conversation. *Id.*

Ms. Baker next spoke with Jane Doe April 9, 2018, when Jane Doe told Ms. Baker she needed to speak with her about a "hypothetical situation" involving a student named "Ashley." *Id.*, document control page numbers 00432-D-007 through -008. In relating the hypothetical to Ms. Baker, Jane Doe described Ashley getting herself into a situation in the still-unnamed individual's office involving "some touching (she was not specific, even when asked) and kissing around the neck and shoulder area." *Id.*, p. 00432-D-007. Jane Doe told Ms. Baker that Ashley "became upset when he tried to kiss her mouth; she said she does not like kissing on the mouth." *Id.*

On April 16, 2018, Ms. Baker received an email from Susan Yelverton, Jane Doe's counselor with Palmetto Health with a signed release authorizing her to discuss Jane Doe's medical information with Ms. Baker. *Id.*, p. 00432-D-008. Ms. Baker spoke with Ms. Yelverton the following day, April 17, 2018, and Ms. Yelverton told Ms. Baker "the story … about 'Ashley' and involved being inappropriately touched on more than one occasion by [the] school resource officer with two children," whose name Jane Doe was still refusing to divulge. *Id.* Ms. Baker told Ms. Yelverton that Jane Doe had provided more information to Ms. Yelverton than she had to Ms. Baker, but noted that the information was "consistent with" what Ms. Baker had been told. *Id.*

Jane Doe met with and was interviewed by two Richland County Sheriff's deputies and investigators Lt. Chris Lindler and Cpt. Heidi Jackson later on April 17, 2018, which interview generated an Incident Report and two Criminal Investigative Division Investigative Reports. *See*, *id.*, pp. 00432-D-001 to -004, -010 to -016. In the interview, Jane Doe provided the

4

hypothetical story of Ashley with still more detail than had been told to Ms. Baker or Ms. Yelverton, amounting to four different occasions in which Jane Doe said—hypothetically—that the still-unnamed individual "touched [Ashley's] butt, kissed her neck, went up her shirt, kissed her lips, and touched her vaginal area." *Id*., pp. 00432-D-001 to -002. *See also*, *id*., pp. 00432-D-010, -014 (Investigative Reports of Cpt. Jackson and Lt. Lindler regarding the same interview).

The following day, April 18, 2018, Jane Doe told Cpt. Jackson by phone that she was "Ashley" and that the situation she had described as a hypothetical really did happen. *Id*., pp. 00432-D-011. Cpt. Jackson then arranged for a forensic interview of Jane Doe with the South Carolina Network Children's Advocacy Centers, which interview was conducted by Allison M. Foster, Ph.D., who issued a Forensic Interview Report. *See*, SCN Children's Advocacy Centers' 4/18/2018 Forensic Interview Report of Allison M. Foster, Ph.D. (Filed herewith as "Exhibit 2"). In her report, Dr. Foster relates having completed two forensic interview sessions with Jane Doe during which she detailed sexually inappropriate encounters with Deputy Jamel Bradley— although Dr. Foster states that Jane Doe did not identify Deputy Bradley until the second interview. *Id*., p. 00432-D-050. Dr. Foster also reports yet another instance of improper touching, as related by Jane Doe, bringing the total of alleged inappropriate encounters to five. *Cf*., *id*., (In addition to the two March encounters in the office, Dr. Foster reported that Jane Doe described "…two other instances in which he patted and squeezed her buttocks, one time in a stair well as they were walking up to his office," and in the second interview another improper touching as described in Dr. Foster's Report, with school personnel and students present.).

Other than the four, and then five, instances of inappropriate touching, kissing, and fondling, Jane Doe reported no other sexually-related activity. She specifically denied that

sexual intercourse had occurred. *See*, Stacey Baker Written Statement, Exhibit 1, p. 00432-D-006.

Jamel Bradley has denied that he inappropriately touched, kissed, or fondled Jane Doe in any manner.

### IV.     SUMMARY JUDGMENT STANDARD.

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is not to weigh the evidence, but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). It is ultimately the nonmovant's burden to pursuade the court that there is a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor. *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014)(citations omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Although the movant bears the initial burden of demonstrating that summary judgment is appropriate, if the movant carries that burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Summary judgment is not a disfavored procedural shortcut, but is an important mechanism for weeding out claims and defenses that have no factual basis. *Id. at* 327.

## V.     DISCUSSION.

**A.     THE PLAINTIFF JANE DOE'S EVOLVING DESCRIPTION OF WHAT SHE MAINTAINS TOOK PLACE GIVES RISE TO, AT BEST, A STATE LAW TORT CLAIM, NOT A CONSTITUTIONAL VIOLATION; AND HER PURPORTED FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM UNDER 42 U.S.C. §1983 SHOULD BE DISMISSED.**

Although the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a set of interests—life, liberty, and property—that are also protected by state tort law, there is some risk of the Clause supplanting state tort law in almost any suit alleging that a local official has caused harm. *Waybright v. Frederick County*, 528 F.3d 199, 204 (4th Cir. 2008). In case after case, the United States Supreme Court has rejected this prospect and spurned any approach to the Fourteenth Amendment that would make it "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.*, quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976). *See also*, *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)("[T]he due process clause guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."); *Collins v. City of Harker Heights*, 503 U.S. 115, 128-29 (1992)("[W]e have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."); *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 202 (1989)("[T]he Due Process Clause of the Fourteenth Amendment … does not transform every tort committed by a state actor into a constitutional violation."); *Daniels v. Williams*, 474 U.S. 327, 332 (1986)("Our Constitution … does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."); *Baker v. McCollan*, 443 U.S. 137, 146 (1979)("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties arising out of tort law.").

Jamel Bradley denies any wrongdoing with regard to Jane Doe, but recognizes that, for purposes of a Motion for Summary Judgment, all evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 124 (4th Cir. 1990). Accordingly, for purposes of Summary Judgment, Jane Doe's allegations are deemed true. Yet even viewing those allegations as being true, while they may give rise to state law claims of civil assault, civil battery, infliction of emotional distress, or outrage, they do not amount to conduct that warrants a violation of a constitutional right invoking a remedy under 42 U.S.C. §1983.

Conduct wrong enough to register on a due process scale must be nothing less than conduct that "shocks the conscience." *Waybright*, 528 F.3d at 205, citing *Lewis*, 523 U.S. at 846. The test for conduct that shocks the conscience turns on the degree of fault, with the general rule being that the action must have been "intended to injure in some way unjustifiable by any government interest." *Id*., citing *Lewis*, 523 U.S. at 849. While Courts have recognized a liberty interest in bodily integrity, they have done so in very limited circumstances. *Hood v. Suffolk City Sch. Bd*., 760 F. Supp. 2d 599, 601 (E.D.Va. 2010). The Court in *Hood* cited three cases involving sexually-related claims seeking redress under §1983 for violation of a substantive due process liberty interest in bodily integrity, and all three were extreme cases in which the conduct and the degree of violation were shocking to the conscience. *Cf., id*. at 601-02 (citing *Wragg v. Thornton,* 604 F.3d 464, 467 (7th Cir. 2010)[Town Fire Chief with a known "propensity … for boys and oral sex and anal sex" having molested the 16-year-old Plaintiff.], *Jones v. Wellham,* 104 F.3d 620, 628 (4th Cir. 1997)[Plaintiff was abducted by a law enforcement officer following a pre-textual traffic stop for suspicion of driving while intoxicated, was taken to a church parking lot, and then was raped, with the law enforcement officer forcing her to have sex with him.], and *Doe v. Taylor Ind. Sch. Dist*., 15 F.3d 443, 450-52 (5th Cir. 1994)[Music Teacher's two-year

sexual abuse of and sexual relations with high school music student, including intercourse over a prolonged period of time]).  While Jane Doe's allegations of inappropriate conduct, if proven, would likely entitle her to relief, given the difference in degree of the complained of conduct from cases in which the Courts have found conduct that shocks the conscience, Jane Doe's relief should properly be through a state law tort claim.

Where a claim sounds in both state tort law and substantive due process, state tort law is the rule and due process the distinct exception, as the Supreme Court has established a strong presumption that §1983 due process claims which overlap state tort law, should be rejected and the case, if diversity is lacking, sent to state court.  *Waybright*, 528 F.3d at 205.  That presumption can be rebutted by showing the governmental conduct was so arbitrary and egregious that it shocks the conscience, usually because the state actor *intended harm* without justification.  *Waybright*, 528 F.3d at 205, citing *Lewis*, 523 U.S. at 845-46, 849. (emphasis added).  There is no evidence showing that Deputy Bradley intended harm to the Plaintiff Jane Doe.

Jane Doe's 42 U.S.C. §1983 claim against Jamel Bradley should be dismissed, with leave to file an appropriate state law tort claim.

**B.     SHOULD THE MINOR PLAINTIFF'S 42 USC § 1983 CLAIM SURVIVE, THE DEFENDANT BRADLEY IS ENTITLED TO QUALIFIED IMMUNITY.**

Jamel Bradley pled qualified immunity as an affirmative defense in his Answer to the Plaintiffs' Complaint.  *See*, Answer(ECF Entry No. 12), pp. 8-9, ¶¶35, 41.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Torcasio v. Murray*, 57 F.3d 1340, 1343 (4th Cir. 1995).

> This objective test involves an inquiry into whether a government official has violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  Under this formulation, a plaintiff may prove that an official has violated his rights, but an official is nonetheless entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights.

*Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991) (quoting *Harlow*, 457 U.S. at 818, and *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990).  The *Harlow* Court noted that qualified immunity is necessary to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."  *Harlow*, 457 U.S. at 818.  Additionally, permitting damages suits against government officials entails substantial social costs, including the risk that fear of personal liability and harassing litigation will unduly inhibit officials in the discharge of their duties.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  Therefore, the courts have addressed these concerns by generally providing qualified immunity to "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

> Moreover, there are two levels at which the immunity shield operates.  First, the particular right must be clearly established in the law.  Second, the manner in which this right applies to the actions of the official must also be apparent.  Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Marciarello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citations omitted), *cert. denied*, 113 S. Ct. 1048 (1993).

> A proper evaluation of the defense of qualified immunity requires:
>
> (1)  identification of the specific right allegedly violated;  (2)  determining whether at the time of the alleged violation the right was clearly established;  and, (3)  if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right.  The first two of these present pure questions of law for the court.  The third, which involves

> application of *Harlow's* objective test to the particular conduct at issue, may require factual determinations respecting disputed aspects of that conduct.

*Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992) (citations omitted).

In order for a constitutional right to be "clearly established," the right must have been recognized by the highest court in the state where the case arose, by the appropriate United States Court of Appeals, or by the Supreme Court. *Wallace v. King*, 626 F.2d 1157, 1161 (4th Cir. 1980), *cert. denied*, 451 U.S. 969 (1981). Additionally, "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Pritchett*, 973 F.2d at 312. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of pre-existing law[,] the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. The official's alleged conduct must be "assessed in light of the legal rules that were 'clearly established'" at the time it was taken, *Anderson*, 483 U.S. at 639, and "must be made on the basis of information actually possessed by [the official] at the critical time, or that was then reasonably available to him." *Pritchett*, 973 F.2d at 312 (citations omitted).

Summary judgment is the appropriate procedure for determining an official's entitlement to qualified immunity. *Torchinsky*, 942 F.2d at 261 (citing *Harlow*, 457 U.S. at 817-818). "'The enticement is an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Torchinsky*, 942 F.2d at 261 (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985)). Because qualified immunity is designed to shield officials not only from liability, but also from the burdens of litigation, establishing it at the summary judgment stage is specifically encouraged. *Pritchett*, 973 F.2d at 313.

11

The first level of inquiry requires identification of the specific right allegedly violated, and determining whether at the time of the alleged violation the right was clearly established. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). In their Local Rule 26.03 Disclosures, in disclosing a summary of their claims with supporting statutory and/or case citations, the minor Plaintiff stated that she "has asserted a claim against Jamel Bradley under 42 U.S.C. §1983 for the violation of her liberty interest, as protected by the Fourteenth Amendment," and cited the Fourth Circuit opinion of *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) to identify the right allegedly violated, claiming that the minor Plaintiff had a "right … not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm." Plaintiffs' Local Rule 26.03 Disclosures (ECF Entry No. 37), pp. 8-9, ¶4. Yet the Plaintiff is overly broad in attempting to stretch the *Jones* holding to accommodate her own claim when the two cases are factually distinguishable.

*Jones* was a case in which the Plaintiff was abducted by a law enforcement officer following a pre-textual traffic stop for suspicion of driving while intoxicated, was taken to a church parking lot, and then was raped, with the law enforcement officer forcing her to have sex with him. *Jones*, 105 F.3d at 622. Even assuming that the minor Plaintiff's assertions of improper and unwanted touching, fondling, and kissing are true, which assumption must be done for purposes of summary judgment, the specific conduct being challenged by Jane Doe is nowhere near the same degree of wanton infliction of physical harm as was perpetrated through the abduction and rape in *Jones*, and does not sufficiently fill out the contours of a constitutional right. *Cf.*, *Pritchett*, 973 F.2d at 312 ("[T]he proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."). *See also*, *Anderson*, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a

12

reasonable official would understand that what he is doing violates that right. . . . [I]n the light of pre-existing law[,] the unlawfulness must be apparent.").

Should the minor Plaintiff's §1983 claim survive summary judgment, Jamel Bradley is entitled to Qualified Immunity and dismissal of the claim against him.

## V.  CONCLUSION.

For the foregoing reasons and on the foregoing grounds, the Defendant Jamel Bradley respectfully requests that the Court inquire into this matter, and issue its Order granting his Motion for Summary Judgment and Dismissal of the Plaintiffs' two causes of action against him.

Respectfully submitted,

DAVIS FRAWLEY, LLC
*s/Patrick J. Frawley*
Patrick J. Frawley, Fed. I.D. No. 890
140 East Main Street (29072)
PO Box 489
Lexington SC 29071-0489
(803) 359-2512
pat@oldcourthouse.com

Lexington, South Carolina
December 20, 2019.

13